Jody Carr
ISCC-G3-16-A
P.O. Box 70010
Boise, Id. 83707

U.S. COURTS

JUN -4 2018

Rcvd_____ Filed_____ Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

In The United States District Court
For The District Of Idaho

| | |
|---|---|
| Jody Carr, Plaintiff, VS. Henry Atencio, Randy Blades, Jay Christensen, Timothy McKay, Capt. Dietz, Patrick Jones, Lt. C. Martinez, Sgt. Nicodemus, Sgt. Mileski, Sgt. Klingensmith, and C/O Matthew Lytle, Defendants | Case No. 1:18-CV-247-DCN Plaintiff's Verified Prisoner's Civil Rights Complaint § 1983 for Damages, Declaratory Relief, and Injunctive Relief. |

Comes Now, Jody Carr, Plaintiff in the above entitled, to Lodge with this Honorable Court, the Plaintiff's Verified Prisoner's Civil Rights Complaint § 1983, for Damages, Declaratory Relief, and Injunctive Relief, pursuant to 42 U.S.C. § 1983.

Plaintiff requests a Jury Trial.

Plaintiff requests appointment of counsel.

1.

# Summons Section

- Plaintiff Jody Carr, is a citizen of Idaho residing at: ISCC - G3-16-A, P.O.Box 70010, Boise, Id. 83707.

- Defendant Henry Atencio is a citizen of Idaho whose address is: IDOC, 1299 N. Orchard, Suite 110, Boise, Id. 83706, and who was employed by IDOC as the Chief Director, and was clothed in the color of state law at all times relevant to this instant case. Henry Atencio is being sued in his Official and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

- Defendant Randy Blades is a citizen of Idaho whose address is: IDOC, 1299 N. Orchard, Suite 110, Boise, Id. 83706, and who was employed by IDOC as Warden of ISCC for part of the times relevant to this instant case, and then as Deputy Chief of IDOC, for part of the times relevant to this instant case, and was clothed in the color of state law at all times relevant to this instant case. Randy Blades is being sued in his Official and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

- Defendant Warden Jay Christensen is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley Rd., Kuna, Id. 83634, and who was employed

by IDOC as Deputy Warden of ISCC, then as Warden of ISCC, and was clothed in the color of state law at all times relevant to this instant case. Warden Jay Christensen is being sued in his Official, and Individual Capacities, via allegations of First, Eighth and Fourteenth Amendment rights violations.

Defendant Deputy Warden Timothy McKay is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC as Deputy Warden of ISCC, and was clothed in the color of state law at all times relevant to this instant case. Deputy Warden Timothy McKay is being sued in his Official, and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

Defendant Captain Dietz is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC as a Captain at ISCC, and was clothed in the color of state law at all times relevant to this instant case. Captain Dietz is being sued in his Official, and Individual Capacities, via allegations of First Amendment rights violations.

Defendant Patrick Jones is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC

as the Case Manager of G-Block, and was clothed in the color of state law at all times relevant to this instant case. Patrick Jones is being sued in his Official, and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

Defendant Lt. Charlie Martinez is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC as a Lieutenant at ISCC, and was clothed in the color of state law at all times relevant to this instant case. Lt. Charlie Martinez is being sued in his Official, and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

Defendant Sgt. Nicodemus is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed as the D.E.F./G-Block Unit Sergeant at ISCC, and was clothed in the color of state law at all times relevant to this instant case. Sgt. Nicodemus is being sued in his Official, and Individual Capacities, via allegations of First, Eighth, and Fourteenth Amendment rights violations.

Defendant Sgt. Mileski is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC

as a Sergeant at ISCC, and was clothed in the color of state law at all times relevant to this instant case. Sgt. Mileski is being sued in his Official, and Individual Capacities, via allegations of First, and Fourteenth Amendment rights violations.

Defendant Sgt. Klingensmith is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd. Kuna, Id. 83634, and who was employed by IDOC as a Sergeant and Disciplinary Hearing Officer, at ISCC, and was clothed in the color of state law at all times relevant to this instant case. Sgt. Klingensmith is being sued in his Official, and Individual Capacities, via allegations of First, and Fourteenth Amendment rights violations.

Defendant C/o Matthew Lytle is a citizen of Idaho whose address is: ISCC, 14601 South Pleasant Valley rd., Kuna, Id. 83634, and who was employed by IDOC as a Corrections Officer working for the Investigations Unit at ISCC, and was clothed in the color of state law at all times relevant to this instant case. C/o Matthew Lytle is being sued in his Official, and Individual Capacities, via allegations of First, and Fourteenth Amendment rights violations.

## Introduction

"Prison walls do not form a barrier seperating inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). Prison guards may not retaliate against inmates or inflict cruel and unusual punishment on them for exercising First Amendment rights.

Plaintiff Jody Carr, is an inmate within the Idaho Department Of Corrections (IDOC), has filed IDOC Internal Grievance System Concern Forms, Grievances, and Appeals. He's also brought claims under 42 U.S.C. §1983 against prison officials for violating his Constitutional rights, prior to commencing this action.

Since then, IDOC Officials have engaged in an endless series of retaliatory acts against Carr. Burnsworth v. Gunderson, 179 F.3d 771 (9th Cir. 1999). Even absent a cognizable liberty interest, a prison can violate an inmates due process rights. Cunningham v. Gates, 989 F. Supp. 1256, 1261 (CD. CA, 1997) (It is settled law that if a group of officers agree if and when some of them knowingly committed unlawful acts other officers will falsify records and testify to cover-up the truth of relevant events, all of those involved are liable in their individual capacity for their involvement or for knowingly refusing to terminate a series of acts by others, which they knew, or reasonably should have known would cause others to inflict constitutional injury.)

# Facts Section

Due to violent attacks, Plaintiff was labled "Protective Custody" (P.C.) and was then housed on G-Block tier #3, at ISCC.

The housing conditions on G-3 were very dirty and unkept during spring of 2017.

On or about, 5/19/17, Plaintiff contracted a very serious staff infection as a result of the deplorable and unsanitary conditions on G3, in his left hand.

The persons in control of G-Block, that actually work on the units... and that have verbally conversations with inmates housed there are G-Block Unit Sgt. Nicodemus, and G-Block Case Manager Patrick Jones.

As this staff infection got worse, Carr and the inmates housed on G3. with him began turning to these IDOC Officials for help with this infection, as it grew to be 4 to 5 times larger than his right hand, split the skin and stunk like pickled Diarhea.

Neither, Nicodemus or Jones did anything.

On the night of 5/25/17, C/o Walton and Corizon Pill Call Nurse Riley demand an Emergency Code and Surgery to save Carr's hand... maybe even his life, enraging Nicodemus and Jones so they Retaliated.

They Rolled Up (Packed) Carr's property, sent it to the Transport Bus and Officers Transfer area, and

pulled Carr's bunk and cell in **6-3**.

Due to a Martinez Report that was Court Ordered by the Honorable Judge Candy W. Dale in U.S. Dist. Ct. Case No. 1:16-cr-00182-CWD, the Defendants had Transferred Marzullo-Trainer from ISCC, to ICI-O a prison in Orofino, Id. to keep them seperated.

On the night of 5-25-17, morning of 5-26-17, Sgt. Nicodemus, with the assistance of Housing Lt. C. Martinez, schedueled Carr and his Property to be Transferred to ICI-O, tobe housed in close-proximatey to Marzullo-Trainer ... despite the Keep Away Alerts, and the Defendants Responses to the Martinez Report and Plaintiff's Motion for Preliminary Injunctive Relief, both in Case No. 182-CWD.

Because of this Plaintiff submitted numerous IDOC Concern Forms regarding and Grievances/Appeals and was informed that Housing Lt. C. Martinez created a Polsicy to throw any P.C. Inmates into The Hole that required Medical Care.

Due to this "Policy", Carr was held in the Isolation area for six days in the infirmery because of Medical needs, ... then for eight more days in Isolation ... then Thrown into The Hole for eight more days. i.e. Punished for daring to need Medical Treatment.

The creation of this Policy to Throw an inmate in the hole for requiring medical care, undoubtedly violates the Constitution, and the attempt to Transfer Carr to ICI-O to mingle with prior

assailant Marzullo-Trainer, surely supports an inference of Retaliatory Intent and Motivation.

On or about, 11-21-17, Plaintiff was sitting under the staircase on unit G-2, at ISCC, with inmate James M. Davis #92595, waiting for evening pill call, when, at about 7:38 pm. Cpl. Cox came over to them and told Davis he was "Cute" and to come with him off the tier to a place they could be "alone". Davis became paniced and did not want to go. Cox gave Davis an order to go, so, he went.

Upon Davis' return to the tier, he told Carr he was scared to call the Prison Rape Elimination Act (PREA) Hotline to report this sexual harassment. Carr told Davis it was Protected Conduct and both IDOC Policy and Constitutional Law that he not be Punished, Threatened, Intimidated or Retaliated against if he chose to call PREA Hotline and Report this.

Davis called the PREA Hotline and Reported Cpl. Cox's sexual harassment on 11-21-17.

Davis and Carr became cellmates in cell #11, on unit G-2, at ISCC.

IDOC Disciplinary Policy (SOP) #318.02.01.001, states a Disciplinary Offense Report (DOR) must be written and served in "no more than 7 days" of the incident, and Evidence must be attached.

IDOC PREA Policy (SOP) #325.02.01.001, states an inmate can not be served a DOR, moved, or Threatened or Retaliated against for making a

PREA Complaint against staff ... it goes further, to state, there is an Automatic Retaliation Monitoring Process that checks to make sure the complaining inmate is not given a DOR, transferred, moved, or retaliated against for lodging the complaint. ~~~~~~~ P.C.

On or about, 3-28-18, Davis was served a DOR for "False Statement" regarding the 11-21-17, PREA Complaint.

Then found guilty by Sgt. Klingensmith the Disciplinary Hearing Officer (DHO.) against both Policy 318, and Policy 325, but the DOR was not affirmed by review authority and dismissed.

On or about, 4-4-18, C/o Lytle and the ISCC Investigations unit Ordered Davis to be moved to another cell because Carr and he were submitting Concern Forms, Grievances, Appeals, Tort Claim Notices, and Civil Suits against IDOC Officials and Officers. i.e. exercising First Amendment rights.

On or about, 4-4-18, the G-Block Unit Sgt. Miller, found out that this move was conducted as Retaliation for the PREA Complaint and First Amendment activities ... Miller and his Cpl. Foley, (Stand Up Officers) went to Housing Lt. Ross, explained this issue, and together, these Honest Officers moved Davis back into cell #11 with Carr.

This enraged C/o Lytle and Investigations officers, so, on or about 4-10-18, they gave Davis another DOR for the 11-21-17 PREA Complaint.

Then, found him guilty via DHO Sgt. Pryor.

Then, D.W. McKay (PREA Coordinator) affirmed it.

- Then, Warden Christensen denied Davis' Appeal.
- The last eight paragraphs were to establish a pattern of conduct i.e. Custom or Policy by these IDOC Officials and Officers to take certain Retaliatory actions against any inmate that submits a PREA Complaint, Grievance, or Appeal, and to Cover Up the Truth of Relevant events to the Facts surrounding their complaint, and to show their attempts to change Carr's Living Conditions.

   On or about 4-18-18, ISCC Investigations Officer C/o Lytle, wrote Plaintiff a D.O.R. for "False Statement" for his Witness Statement form submitted in support of Davis' PREA Complaint against Cpl. Cox, that occurred on or about 11-21-17, nearly Five Months earlier.

   IDOC Policy for Disciplinary Actions # 318.02.01.001., states "no more than 7 days" after knowledge of the incident; the Evidence must be Attached, and other issues these Officials violated to write this Retaliatory D.O.R..

   IDOC Policy for PREA Complaints # 325.02.01.001., states an inmate can not be Punished, Threatened, Moved, or Written DOR's for Registerring PREA Complaints against IDOC Officials, Officers, or Privately Contracted Staff.

   On or about 4-19-18, Carr and Davis called the PREA Hotline to Register a Complaint regarding the Retaliatory D.O.R.s, Moves, and Threats. These calls were made at approximately 2:05 pm, per Policy 325.

   On or about 4-19-18, Sgt. Mileski (acting on the Orders of PREA Coordinator D.W. McKay) at approx-

imately 3:00 pm, called Davis, then Carr, out to the G-Block Foyer, and Threatened them ... Telling them to "Stop" calling the PREA Hotline, and implying there would be Grave Consequences if they called it again.

Now to establish an Adverse Action, an inmate "may assert an injury no more tangible than a chilling effect on First Amendment rights". Broheim v. Cry, supra, 584 F.3d at 1269-70. In Broheim, this Court held that a statement that "'warns' a person to stop doing" something implies a "consequence of a failure to heed that warning" and satisfies the adverse action element. Id. at 1270. There, the corrections officer's written threat that the inmate should be "careful what you write ... on this [complaint] form" was sufficient to establish an adverse action. Id. at 1266.

Now to establish a chilling effect an inmate need show harm only "more than minimal". Shepard v. Quillen, 840 F.3d 686, 691 (9th Cir. 2016). ~~████~~

On or about 4-20-18, Disciplinary Hearing Officer (D.H.O.) Sgt. Klingensmith, found Carr guilty of the DOR, stating, because the D.O.R. said Carr was guilty ... Carr was guilty. Despite Policy 318. stating a "no more than 7 day", timeline, despite 318. stating the "evidence" must be attached to the DOR ... not the DOR itself, despite Policy 325 stating inmates can not be written DORs for lodging PREA Complaints, nor submitting Witness Statement forms in participation of PREA

Complaints, and Case Law showing a Complaint to Grievance Committee can not be the basis of a DOR for lying. Clearly violating First and Fourteenth Amendment rights (Due Process), as well as the IDOC Policies 318, and 325, all of which was clearly explained by Carr, to D.H.O., Sgt. Klingenreth.

Then, PREA Coordinator Deputy Warden McKey affirmed the DOR finding of guilt to spite Carr's DOR arguments, IDOC Policies, and Constitutional rights violations.

Then, Carr appealed to Warden Christensen, stating, "This DOR & it's finding of Guilt violate my 1st & 14th Amendment rights to petition the Government for a redress of grievances & to speak out about inmate abuse without Fear of Retaliation; This DOR Chills my 1st Amendment; Then Due Process of the 14th Amendment because Disciplinary Hearing failed to meet Constitutional Standards & Requirements, in tandem with violating Policies 318 & 325 and No Evidence of False Statement. All parties to this DOR & Finding of Guilt are violating my rights. I have to submit this Appeal to show the U.S. Courts I exhausted remedies to proceed in civil suits. However, if you dismiss this DOR, I loose the investigation evidence & D.H.O. audio recordings they'll be expunged. If affirmed, I can subpeona them for my amended Lawsuit, Case #1:12-cr-00167-C.W.D.".

Warden Christensen Denied this appeal, stating, "IDOC staff deserve protection from offenders that seek to victimize them with means meant to protect all.

This was thoroughly investigated and found to be falsified by the other offender and you aided him in the falsification in order to attack a staff members character. It is important to document this permanently. DOR stands."

There was No Investigation finding anything, and at Discovery Phase ... these named Defendants will have to Produce this "investigation" findings, at least in Redacted Form, and via In Camera Review. Cpl. Cox never even denied telling Davis he was "Cute" and the Records show.... Cox took Davis to a Private Location. Therefore, the Statement could not be "False" if 100% of the Statement Occurred.

The Carr and Davis DORs were concockted to Slander the Testimonies of Carr and Davis, due to their US. Dist. Ct. of Idaho Civil Suits; to Cover Up the Truth of Relevant Events surrounding the PREA Violations and Constitutional rights violations occurring in ISCC Prison ... against inmates .... at the hands of IDOC Officials and Officers, and to Punish/Retaliate against any inmate (Plaintiff) that file grievances, appeals, PREA complaints, or Participate in PREA Complaints (against IDOC Officials or Officers).

█  A complaint made to grievance committee was protected by First Amendment and accordingly could not be the basis for a disciplinary report for lying. Hunyadi v. Smith, 447 NYS 2d 226 (S.Ct. 1982),

- Investigations Officer % Lytle, PREA Coordinator D.W. McKay teamed up and employed Captain Dietz ... to force Lt. Ross, and G-Block Unit Sgt. Miller to move Plaintiff from G-2, cell #11, to G-3, cell #16, as to seperate Carr and Davis to hinder their ability to exercise First Amendment activities, to cover-up the PREA Violations occurring against inmates in their facility ... at the hands of their Officers, and to Retaliate against Carr and Davis for daring to Lodge a Complaint.

- Carr was moved on or about 5-4-18, from G-2, cell #11, to G-3, cell #16.

- This move was the Liability of McKay, Lytle, and Dietz Not, of Ross or Miller.

- Please Note: Lytle, and McKay. waited 4 months to write the DOR and conduct the 5-4-18 move Violating their own Policies 325, and 318, as to circumvent the "Automatic Retaliation Monitoring Process" mentioned earlier in this section, which is a 90 day process that checks to see if Plaintiff's are given DORs, Threatened, or Moved, tending to support the inference that this was absent an accident or mistake.

- Threats of transfer can chill an inmate's First Amendment rights. Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001)(determining that corrections officers chilled the inmates' rights when they threatened to, but did not actually, transfer him for helping other inmates with their legal matters), Here, these

Defendants did not merely Threaten Mr. Carr, they Transferred Davis on 4-4-18, when that was rectified by housing Lt. Ross and Unit Sgt. Miller... They then Transferred Carr to G-3, 16-A.

Please Note Further: In the Body of this DOR against Carr, C/o Lytle states, "Inmate Carr has been recorded on Century link proclaiming himself to be "as close to an attorney as you could possibly get". Then, "information came forward from the inmate population that Inmate Carr regularly trades his imitation legal counsels in exchange for commissary items".

This Court has observed that relying on a defendant's asserted penological interest could validate "a cover or a ruse to silence and punish" the plaintiff. Bruce v. Ylst, supra, 351 F.3d at 1289. In Bruce, the plaintiff stated that the prison officials labled him a gang member in retaliation for filing grievances. Id. at 1287. Although the court recognized that the defendant had a legitimate penological interest in stopping prison gang activity, it held that a penological concern of general applicability cannot "defeat a retaliation claim on summary judgment... when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right". Id. at 1289.

Prisoner's have a First Amendment right to be free from prison transfers or reassignments made in retaliation for filing grievances. Rizzo v. Dawson, 778 F.2d

527,531-32 (9th Cir. 1985) (reversing summary judgment because the plaintiff had provided sufficient evidence that the prison officials' conduct was retaliatory when they transferred him after he helped other inmates with their legal matters), Thus, the 4-4-18 move of cellmate Davis, followed by the 5-4-18 "reassignment" of Carr, amounts to a Constitutional violation, and an Adverse Action.

In Bruce, the Court found that inmates' evidence raised a triable issue of fact regarding the motivation behind this action. Id. at 1289. Specifically, the inmate submitted evidence of suspect timing which was bolstered by suspicious motivations since the prison officials relied on stale evidence to lable him a gang member. Id. at 1288-89.

Remembering the DOR has two seperate areas that clearly make negative statements about Carr being "close to an attorney" and "Carr regularly trades his imitation legal counsels" ... during the course of a DOR for his Witness Statement regarding a PREA Complaint, ... tends to support an inference, that ... the IDOC Official Defendants are actually angery about the facts that he "helped other inmates with their legal matters", Rizzo v. Dawson, 778 F. 2d 527,531-32 (9th Cir. 1985).

Remembering secondly ... the DOR s to Carr and Davis "relied on stale evidence to lable" them liars. Policy 318 states "no more then 7 days" it had been 4 months for Davis, and 5 months for Carr. Not only was the evidence "stale" it was

unauthorized by these IDOC Official Defendants'
own Policies #318.02.01.001., and #325.02.01.001.

Injuries from being thrown in Isolation for
three weeks for requiring Medical Care on 5-25-17.:

The attempt to Transfer Carr to ICI-O, to be
attacked by Marzullo-Trainer, again on the night of
5-25-17, morning of 5-26-17... cause real Fear,
Anxiety, Higher Blood Pressure, and Pain and Suffering.

The three weeks of Isolation because Carr had
an infection in his left hand lanced at the ISCC
infirmery on 5-25-17/5-26-17, causes grave fear
and anxiety as Plaintiff needs Medical Care, and he
could be Thrown in The Hole just for needing care...
resulting in Carr putting off his medical care requests,
baring pain and further injuries in his attempts to
forgo being Thrown in The Hole.... again... except when
he has no other choice.

Injuries from the Davis/Carr PREA Complaints:

The DOR Carr recieved for his Witness Statement
Form and Affidavit in support of Davis' 11-21-17, PREA
Complaint made it so no other inmates on ISCC
units G2, G3, and/or G4 would write Witness State-
ment Forms nor Affidavits in support of Carr, or
Davis, in support of any occurrences that
Carr or Davis suffered... out of Fear of
Threats, Retaliatory DORs, and/or Transfers/
Reassignments.... not soley "Chilling" Carr's
First Amendment activities... but, actually
Blocking certain Issues/Claims from Court

Access.

Retaliation Standard for Review:

An inmate asserting a retaliation claim must show (1) "that state actor took some adverse action against an inmate", (2) "because of", (3) "that inmates' "protected conduct", (4) which "chilled the inmates' exercise of his First Amendment rights", and (5) that the "action did not reasonably advance a legitimate correctional goal". Rhodes v. Robinson, supra, 408 F.3d at 566-68. To establish an adverse action pursuant to the first element of a retaliation claim, an inmate "may assert an injury no more tangible than a chilling effect on First Amendment rights". Broheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009). A corrections officer has retaliatory intent because of an inmates' conduct when "the 'substantial' or 'motivating' factor "behind the officers' behavior is the inmates' exercise of protected conduct". Sorannos' Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). A defendants' adverse action chills a plaintiff's conduct when it would "chill or silence a person of ordinary firmness from First Amendment activities". Mendocino Environmental Center v. Mendocino County, supra, 192 F.2d at 1300. This objective standard exists to ensure that a defendant does not escape liability

simply "because an unusually determined plaintiff persists in his protected activity". Rhodes v. Robinson, supra, 408 F.3d at 569. Otherwise, a plaintiff is caught in a "vicious Catch-22" where the only prisoner's the only prisoner's who can obtain a redress for the chilling of their First Amendment rights are those unable to seek it. Ibid (quoting Lamar v. Steel, 693 F.2d 559, 562 (5th Cir. 1982)). Finally, a prisoner bears the burden of pleading and proving the abscence of a legitimate penological purpose for the conduct of which he complains, Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). However, prison officials may not defeat a retaliation claim on summary judgment "simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right". Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

### Due Process Standard for Review

Even absent a cognizable liberty interest, a prison can violate an inmate's due process rights. Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999). Such a claim arises when the prison has chosen to provide inmates with a hearing, but failed to meet the general standards required of due

process in that hearing. Id. For example, in Nonnett v. Small, 316 F.3d 872, 878-89 (9th Cir. 2002). a plaintiff's challenge to administrative segregation rested on the fact that it was imposed as a result of a disciplinary hearing in which the adverse finding was supported by no evidence. This Court held that, "such a lack of a fair hearing violates due process, wholly apart from the conditions of confinement and without regard to the Sandin requirements".

As far back as 1999, the Ninth Circuit held that prison officials must abide by the Due Process Clause when providing process. Burnsworth, 179 F.3d at 775. And for well over a quarter century, due process requires notice and opportunity for a meaningful hearing. Matthews v. Eldridge, 424 U.S. 319, 333 (1976). Defendants' failure to provide even these basic requirements of due process violated well-established law.


Deliberate Indifference Standard for Review:


Nieto v. State, 952 P.2d 834 (CO Ct. App. 1997) Do to inadequate treatment inmate was found unconscious and incontinent, his right eye bulging from the socket, which was determined to be the result of a severe sinus infection that spread to his brain. After 5 surgeries, 3 of which were on the brain, the Court affirmed the judgment of $150,000 in favor of the plaintiff.

Appointment of Counsel Standard for Review:

Under 28 U.S.C. §1915(e)(1), courts are granted discretion to "request an attorney to represent any person unable to afford counsel", id., under "'exceptional circumstances'". Agyeman v. Corrs. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984).

Satisfying the "exceptional circumstances" standard requires a two-tiered analysis demanding "an evaluation of the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved". Id. at 800 n. 8 (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)). This Court has emphasized that these factors should be viewed together, and that niether factor is dispositive. 30.64 Acres of Land, 795 F.2d at 800 n. 8 (citing Wilborn, 789 F.2d at 1331).

1.    Claim #1. : Retaliation :

1.(a).    Defendants Sgt. Nicodemus, Lt. C. Martinez, and
Case Manager Patrick Jones action on 5/25/17,-
5/26/17, of Rolling Up Carr's property and attemp-
ting to Transfer Carr to ICI-O Prison in
Orofino, Idaho where Marzullo-Trainer is housed
due to the IDOC "Keep Away Alerts" despite
the Sworn Statements of IDOC Officials during
the course of U.S. Dist. Ct. for Dist. of Idaho
cases : 1:16-cv-00182-CWD, and 1:17-cr-00167-
CWD ... to include but not limited to .... the
Martinez Reports (182), and Responses to
the Complaints themselves, and Response and
Declarations in Support of Pleadings and
Defenses ... swaring under oath, that Carr and
Marzullo-Trainer were to kept approximately
"300 miles" apart, was not done out of Ignora-
nce, as these issues were Well Documented,
supporting the inference that this action
was motivated by Retaliation.

1.(b).    Defendants Lt. C. Martinez creation of a Policy
or Custom to Throw Protective Custody (P.C.)
inmates (Plaintiff) into The Hole if they require
Medical Care ... which occurred from 5/25/17
through 6/15/17, to Carr .... clearly violates
the Constitution ... and amounts to Retaliation
for the protected conduct of Access to Reason-
able Medical Care without Fear of Punishment.

23.

1.(c).   Defendants Sgt. Nicodemus, Lt. C. Martinez, and Case Manager Patrick Jones action of revoking Carr's Bunk and Cell on unit 6-3, then having him placed in Isolation and The Hole from 5/25/17 through 6/15/17, for requiring Medical Care for a staff infection in his left hand ... was hidden behind a supposed "Policy" created by Lt. C. Martinez .... However, Carr was the Only P.C. inmate to suffer this loss of bunk and cell and Isolation/The Hole for 22 days. When taken in Tandum with the 5/25/17/5/26/17, attempt to Transfer Carr to ICI-O ... supporting an Inference that this Isolation/Time in The Hole, was Retaliatory.

1.(d)   Defendant C/o Lytle's act of moving Davis (Plaintiff's cellmate), on or about 4/4/18, to another cell, because they were participating in a PREA Complaint against IDOC Official Cpl. Cox, was an act of Retaliation ... to change Plaintiff's Living Conditions because he was engaging in First Amendment protected activities.

1.(e).   Defendant C/o Lytle's act of writing Plaintiff a DOR for a Witness Statement form he submitted in support of James M. Davis' 11-21-17 PREA Complaint against Cpl. Cox, on or about 4/18/18 ... violating IDOC S.O.P.'s

24.

# 318.02.01.001, and # 325.02.01.001, was direct Retaliation for participating in a PREA Complaint against an IDOC Official (Cpl. Cox). i.e. First Amendment protected conduct, and was inflicted as an Adverse Action for the purposes of Dissauding Carr and Davis from First Amendment activities, to Punish them for these "activities", to Discredit their Testimonies and to Cover Up the PREA Violations and Constitutional rights violations taken place in ISCC against inmates, at the hands of IDOC Officials, violating First Amendment.

1.(f)  Defendants D.W. McKay and Sgt. Mileski's act of Threatening Carr and Davis in the G-Block Foyer on or about 4/19/18 at approximately 3:00 pm ... to STOP calling PREA Hotline despite PREA Policy #325.02.01.001. saying they could call to Report the Retaliatory DORs and Moves ... clearly implying that there would be consequences for failure to heed this Order, amounts to Retaliation and an attempt to Dissuade First Amendment activities and to Cover Up the Truth of Relevant Events.

1.(g).  Defendants Sgt. Klingensmith, D.W. McKay, and Warden Jay Christensen, find Carr guilty of the DOR. despite there own SOP's #318.02.01.001., and #325.02.01.001., saying they can

25.

not find him guilty ... they can't even write him the DOR .... together with Constitutional Gavruntees ... and seen in, Hunyadi v. Smith, 447 NYS 2d 226 (S.Ct. 1982) A complaint made to grievance committee was protected by First Amendment and accordingly could not be the basis for a disciplinary report for lying.

1.(h). Defendants %Lytle, D.W. McKay, and Captain Dietz' act of Transferring Carr from G2, cell # 11, housed with cellmate Davis # 92595, to G3, cell # 16, on or about 5/4/18, as Retaliation for the 11/21/12 participation in the PREA Complaint against Cpl. Cox; the 4/4/18 move of Davis out of cell # 11, then, back to cell # 11; the 4/19/18 calls to PREA Hotline to report the Retaliatory DORs and Moves; and for filing IDOC Internal Grievance System, Concern Forms, Grievances and Appeals ... amounts to Retaliation for protected First Amendment activities, to Dissuade Carr and Davis from engaging in First Amendment protected activities, and to Cover Up the Truth of the Events Relevants to the PREA Violations, and Constitutional rights violations occurring at ISCC Prison, against inmate's (Plaintiff) at the hands of IDOC/ ISCC Officials and Officers, which if true ... undoubtedly violates First Amendment rights.

26.

1.(i). Defendants Nicodemus and Jones, leaving Plaintiff without proper Medical Care for his infected left hand from 5/19/17 through 5/25/17, despite it's series magnitudes... was an act taken out of Retaliatory Motivation .... violating First Amendment.

1.(j) Defendants Chief Director Henry Atencio, and Deputy Chief Randy Blades were both contacted by the Plaintiff on multiple occaissions via IDOC Internal Grievance System Concern Forms, Grievances, Appeals, and by handwitten letters, regarding these Retaliatory issues ... as well as .... other Retaliatory issues, and they both Failed to Act to resolve these, or any of the "other Retaliatory issues".

These Failure to Act occurrences are shown by Exhibits attached hereto.

Please see Exhibit Index, and the Attached Exhibits.

1.(k) Defendant C/O Lytles statements in the body of the DOR #182327, "Inmate Carr has been recorded on Century link proclaiming himself to be "as close to an attorney as you could possibly get", and "information came forward from the inmate population that inmate Carr regularly trades his imitation legal counsels in exchange for commissary items", Clearly show Retaliatory Intent due to Carr's Status as a Jailhouse Lawyer and his exercise of First Amendment rights.

27.

2. Claim #2.: Due Process of Law Violations:

2.(a). Defendant Sgt. Klingensmith's act of finding Carr guilty of the DOR on or about 4/20/18, despite IDOC Policies #318.02.01.001, and #325.02.01.001, saying Carr could not be found guilty (not even written a DOR), due to Timelines, Lack of Evidence, Prejudice, and the Constitutional First Amendment protections, also seen in: Hunyadi v, Smith, 447.NYS 2d 226 (S.Ct. 1982) A complaint made to grievance committee was protected by First Amendment and accordingly could not be the basis for a disciplinary report for lying. Clearly Violated the Due Process of Law Clause in Fourteenth Amendment.

2.(b). Defendant D.W. McKay (PREA Coordinator of ISCC) Affirmed the Guilty Verdict on this DOR #18237, on or about 4/23/18, despite Policies #318.02.01.001, and #325.02.01.001, the Constitution, and Hunyadi, 447 NYS 2d 226 (S.Ct.1982) violating the Due Process Clause of the Fourteenth Amendment.

2.(c). Defendant Warden Jay Christensen's Denial of Carr's DOR Appeal #18237, on or about, 5/3/18, despite Appeal Arguments, Policies # 318.02.01.001, and #325.02.01.001, the Constitution, and Hunyadi, 447 NYS 2d 226

(S.Ct. 1982) violated the Due Process of Law Clause of the Fourteenth Amendment.

3.  Claim #3.: Deliberate Indifference :

3(a)   Defendants G-Block Unit Sgt. Nicodemus, and G-Block Case Manager Patrick Jones, left the Plaintiff to suffer from the severe staff infection from 5/19/17, through 5/25/17, all the way until the infection became so bad and swollen ... that it split the skin between his fingers, in multiple places .... C/o Walton and Corizon Pill Call Nurse Riley ... had to Demand Emergency Medical Code... followed by Emergency Surgery. Then throwing Carr into The Hole for getting Medical Care after Nicodemus, and Jones refused him care. Because their attempts to inflict intentional and wanton pain and suffering was cut short by Walton and Riley ... ending in 3 weeks of Isolation/Segregation..... and... permanent injury in Carr's Left Hand ... amounting to Deliberate Indifference to Carr's serious medical needs.

# Prayer for Relief

1.  Plaintiff seeks an award of Compensatory Damages from each Defendant in the amount of

1 (a)  Individual Capacity $50,000.00 per Defendant.

1 (b)  Official Capacity $100,000.00 per Defendant.

2.  Plaintiff seeks an award of General Damages from each Defendant in the amount of

2 (a)  Individual Capacity $50,000.00 per Defendant

2 (b)  Official Capacity $100,000.00 per Defendant

3.  Plaintiff seeks an award of Punitive Damages from each Defendant in the amount of

3 (a)  Individual Capacity $500,000.00 per Defendant

3 (b)  Official Capacity $750,000.00 per Defendant

4.  Plaintiff seeks Declaratory Relief consisting of Declarations from the Court... showing these Defendants willfully violated Carr's Constitutional rights. For use in the seeking of Criminal Charges under, 18 U.S.C. 42 ; U.S. v. Walsh, 194 F. 3d 37 (2nd Cir. 1999).

5.  Plaintiff seeks Injunctive Relief consisting of an Injunctive Order to Expunge and Purge Carr's IDOC Disciplinary File, and to Permanently Transfer Carr to one of the following Idaho Minimum Security

Facilities:

5.(a)   Givens Hall  (in General Population)

5 (b)   Saint Anthony's (in General Population)

5 (c)   Cottonwood (as an inmate worker)

5 (d)   Any Idaho C.W.C. (as an inmate worker)

5 (e)        And Plaintiff is to be afforded 100%
        of all the same privileges, job opportunities,
        education, visits, food, phones, housing,
        programs, recreation, and religious services,
        as any other inmate at these facilities,
        for the remainder of his incarceration.

# Exhibit Index

A-0001-Pack: Contains two similar but different IDOC Internal Grievances System Grievances and their Attachments... and two Concern Forms to Grievance Coordinator Emily Morrison..... explaining how and why these Grievances and Attachments should be processed.

Followed by Emily Morrison's meritless Grievance Transmittal Form Refusing to process these Grievances... and he Lack Luster reply on Concern Form "1st of 2". These clearly meet the requirements set out in Ross v. Blake, 136 S.Ct. 1850, 1859 (2016)(administrative remedies are unavailable when administrative procedures "operate [] as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates".)

Showing No Administrative Remedies, as Morrison states "Not Grievable", so, they are effectively "unavailable".

A-0002-Pack: Henry Atencio, Notice, and Failure to Act, Disciplin, Investigate, or Reprimand: Custom or Policy.

A-0003-Pack: D.W. McKay: Notice, Retaliation, Cover-Up, and Failure to Act.

- A-0004-Pack: %o Lytle, Retaliation, Cover-Up, Due Process Violations, and violations of IDOC Policies.

- A-0005-Pack: Capt. Dietz, Retaliatory Move 5-4-18.

- A-0006-Pack: Sgt. Nicodemus, Retaliation, Cover-Up, Deliberate Indifference; Lt. C. Martinez, Policy or Custom, Deliberate Indifference, and Randy Blades Notice and Failure to Act

- A-0007-Pack: Jay Chistensen, Patrick Jones, and Randy Blades, Retaliation, Transfers and Reassignments, Cover-Ups, and Custom or Policies.

- A-0008-Pack: Affidavits

- Appendix - A-1  Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001).

I declare under penalty of perjury that all the statements I make herein are true to the best of my knowledge.

Jody Carr #79004

5-24-18

I certify that on the 29th day of May, 2018, I mailed via the ISCC Paralegal for mailing through the U.S. Postal Service, a true and correct copy of the Plaintiff's Verified Prisoner's Civil Rights Complaint §1983 for Damages, Declaratory Relief, and Injunctive Relief,

To:

IDOC A.G. Office, C/o Mark Kubinski
1299 North Orchard, Suite 110
Boise, Id. 83706

Jody Carr #79004

X _____  X 5-29-18
      Signiture                Date

34.